**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TRUSTEES OF THE REFRIGERATION AIR CONDITIONING & SERVICE DIVISION PENSION FUND, WELFARE FUND, ANNUITY FUND, EDUCATION FUND, INDUSTRY FIND AND INTERNATIONAL TRAINING FUNDS,** *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>**P.J.M. MECHANICAL CONTRACTORS, INC.,**<br><br>Defendant. | Civil Action No. 23-20438 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

   **THIS MATTER** comes before the Court upon an unopposed Motion for Default Judgment (the "Motion," ECF No. 11) filed by Plaintiffs—Trustees of the Refrigeration Air Conditioning & Service Division Pension, Welfare, Annuity, Education, Industry, and International Training Funds, for and on behalf of themselves and said funds ("Plaintiff Funds"); and the New Jersey Committee Representing the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Plaintiff Union") (collectively "Plaintiffs")—against Defendant P.J.M. Mechanical Contractors, Inc. ("Defendant"). In support of the Motion, Plaintiff filed a brief ("Moving Br.," ECF No. 11-1), Certification of Steven J. Bushinsky ("Certification I," ECF No. 11-2), and nineteen exhibits ("Ex. A–S," ECF No. 11-3).

Plaintiffs thereafter submitted an amended document to Exhibit L reflecting a remittance report prepared by Defendant (ECF No. 13-1), and a supplemental certification by Steven J. Bushinsky with two exhibits. ("Certification II," ECF No. 14-1.) After careful consideration of Plaintiffs' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT** Plaintiffs' Motion for Default Judgment.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.    FACTUAL BACKGROUND[2]

According to the Complaint, Plaintiffs are trust funds established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), and are employee benefit plans established and maintained pursuant to Sections 3(1), (2), and (3) of the Employee Retirement Income Security Act ("ERISA"). (Compl. ¶ 7.)   The Plaintiff Funds are "multiemployer plans," "employee benefit plans," and "employee welfare benefit plans" within the meaning of ERISA. (*Id.* ¶ 8.) Plaintiff Funds' Trustees are fiduciaries under ERISA as well. (*Id.* ¶ 10.) Plaintiff Funds have a principal place of business in West Trenton, New Jersey. (*Id.* ¶ 13.) Moreover, Plaintiff Union is an unincorporated labor organization within the meaning of Section 301 of the LMRA and Section 3(4) of ERISA. (*Id.* ¶ 14.) Plaintiff Union has a principal place of business in Annapolis, Maryland. (*Id.* ¶ 16.) Defendant P.J.M. Mechanical Contractors is a party of interest under ERISA and has a principal place of business in Lawrenceville, New Jersey. (*Id.* ¶ 17–18.)

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[2] For purposes of this Motion, the Court will construe the factual allegations contained within the Complaint as true. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

As alleged, the parties entered into a Collective Bargaining Agreement known as the National Service & Maintenance Agreement (the "Agreement"). (*Id.* ¶ 15.) As a signee, Defendant agreed to abide by the terms of the Agreements and Declarations of Trust, including the Policy for the Collection of Fringe Benefit Contributions. (*Id.* ¶ 21.) Under the terms of the Agreement, Defendant was required to regularly pay to Plaintiff Funds certain sums of money determined by the hours worked by Defendant's employees or by Defendant's gross labor payroll. (*Id.* ¶ 22.) Defendant was required to timely make these contributions and pay liquidated damages for any delinquent contribution. (*Id.*) The Agreement moreover required Defendant to maintain records and timecards and to submit those records to Plaintiffs upon request to ensure that Defendant made "full and prompt payment of all sums required." (*Id.* ¶ 23.)

Plaintiffs allege four counts in their Complaint: (1) a failure to remit contributions under ERISA against Defendant since Defendant failed to make benefit contributions as promised under the Agreement (Count One) (*id.* ¶ 29); (2) a failure to remit dues checkoffs and vacation benefits against Defendant because the Agreement states that Defendant must deduct dues checkoff and vacation benefit payments from the wages of Defendant's employees and it has failed to do so (Count Two) (*id.* ¶ 36); (3) a failure to remit contributions under the Agreement against Defendant (Count Three); and (4) a failure to post a surety bond for wages and benefit contributions against Defendant because Defendant was supposed to post a surety bond in the amount of $128,000 to secure Defendant's obligations to make payments to the funds (Count Four) (*id.* ¶ 44).

### B.    PROCEDURAL HISTORY

Plaintiffs filed their Complaint on September 18, 2023. (ECF No. 1.) According to Plaintiffs' Motion, they attempted, albeit unsuccessfully, to effectuate service at Defendant's main business address on three separate occasions. (Moving Br. at 6.) Plaintiffs then found another

address for Defendant and attempted, but failed again, to serve Defendant with process at that new address. (*Id.*) On November 13, 2023, substitution of service of the Summons and Complaint was made by personal service to the New Jersey State Treasurer. (*Id.* at 7.) On December 1, 2023, the New Jersey Department of Treasury submitted a letter acknowledging its receipt of the Complaint and indicating that it will attempt to serve the Complaint on Defendant in accordance with N.J. Stat. Ann. § 2A:15-30.1. (Ex. Q, ECF No. 11-3.) Defendant has not responded. As a result, Plaintiffs moved for a clerk's entry of default under Rule 55(a), which was granted on December 14, 2023. (ECF No. 7.) After being granted an extension to file a Motion for Default Judgment, Plaintiffs filed the instant Motion on May 21, 2024. (ECF No. 11.)

## II.    JURISDICTION

Before entering default judgment, the court must make a "threshold determination" of whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the defendant. *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015); *TM Mktg. v. Art & Antiques Assocs., L.P.*, 803 F. Supp. 994, 997 (D.N.J. 1992). The Court will address each in turn.

### A.    SUBJECT MATTER JURISDICTION

The Complaint alleges claims based on ERISA, 29 U.S.C. § 1132(a), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Accordingly, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### B.    PERSONAL JURISDICTION

In addition to having subject matter jurisdiction over the claims, the Court must have personal jurisdiction over the Defendant. *See Allaham*, 635 F. App'x at 36 ("While unlike subject matter jurisdiction, a court generally may not raise personal jurisdiction *sua sponte*, when a default judgment is requested, a court is required to make a threshold determination regarding any

jurisdictional defects."). A court may exercise personal jurisdiction over a defendant if it has "the authority to do so from a source of positive law (such as a statute or a rule of civil procedure)" and if exercising jurisdiction would not violate "the outer limits" set by the Due Process Clauses of the Fifth and Fourteenth Amendments. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380–83 (3d Cir. 2022).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). A court has specific jurisdiction when (1) a defendant purposefully avails itself of the privileges of the forum state, (2) plaintiff's claim arises out of or relates to a defendant's contacts within the forum state, such that the defendant could "reasonably anticipate being haled into [the state's] court[s]," and (3) comporting jurisdiction would not offend traditional notions of fair play and substantial justice. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Here, the Court has general personal jurisdiction over Defendant. A corporation is subject to general jurisdiction in the state in which the corporation is "fairly regarded as home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Importantly, corporations are citizens both in the state where they are incorporated and, in the state where they have their principal place of business. 28 U.S.C. § 1332(c); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). As alleged in the Complaint—which the Court assumes as true for purposes of this Motion—Defendant has a principal place of business in Lawrenceville, New Jersey, and conducts business in New Jersey.

(Compl. ¶¶ 18–19.)  It is therefore apparent from the Complaint that Defendant is essentially "at home" in New Jersey for purposes of general jurisdiction.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").  Accordingly, the Court has personal jurisdiction over Defendant.[3]

### III.    LEGAL STANDARD

Rule 55 governs default and default judgment.  *See* Fed. R. Civ. P. 55.  Pursuant to the Rule, the clerk must enter default against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  After an entry of default, a plaintiff may seek default judgment under either Rule 55(b)(1) or Rule 55(b)(2).  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a).").

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  However, "entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) (citing *Super 8 Motels, Inc. v. Kumar*, Civ. No. 06-5231, 2008 WL 878426, at *3 (D.N.J. Apr. 1, 2008)).  In other words, the district court must remain mindful that entry of default "is a sanction of last resort."  *Id.*

---

[3] Absent from the Record is the location where Defendant is incorporated, but the location of its principal place of business in New Jersey suffices for the purpose of personal jurisdiction.

"In assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis, under which the Court must determine (1) whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]" *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 599–600 (D.N.J. 2016) (internal quotation marks omitted).

Moreover, before entering default judgment, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default. *Sabinsa Corp. v. Prakruti Prods. Pvt. Ltd.*, Civ. No. 14-4738, 2023 WL 7298471, at *6 (D.N.J. Nov. 6, 2023) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71 (3d Cir. 1987)). An entry of default judgment is not a right that plaintiffs are entitled to and a "defendant's failure to appear or answer does not vitiate the Court's responsibility to examine the complaint." *Paniagua Grp.*, 183 F. Supp. 3d at 600 (internal quotation marks omitted).

## IV.   **DISCUSSION**

As stated, in addition to having subject matter jurisdiction over the claims and personal jurisdiction over the defendant, the Court must also consider whether process was properly served on Defendant, including whether there was sufficient proof of service, whether a sufficient cause of action was stated, and whether default judgment is proper. The Court will address each in turn.

### A.   **SERVICE OF PROCESS**

The Court finds that Plaintiffs have provided sufficient proof of service. The Federal Rules of Civil Procedure require that a plaintiff serve a defendant corporation, partnership, or association with a summons and complaint "in a judicial district of the United States . . . in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1)

states that when serving an individual with a summons and complaint, service of process may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Id.* 4(e)(1).

"Under New Jersey law, personal service is the primary method to serve an individual located within the state. N.J. Ct. R. 4:4-4(a). New Jersey Court Rule 4:4-4(b), however, permits substituted service when personal service cannot be effectuated in accordance with [New Jersey Court] Rule 4:4-4(a)." *Howard Johnson Int'l v. C.C. Host L.L.P.*, 2005 U.S. Dist. LEXIS 25153, at *3 (D.N.J. Oct. 21, 2005). Substituted or constructive service requires a demonstration of due diligence that satisfies the requirements specified in New Jersey Court Rule 4:4-5(b). *Argonaut-Midwest Ins. Co. v. Colt Logistics Inc.*, Civ. No. 18-11783, 2018 WL 6716104, at *1 (D.N.J. Dec. 20, 2018); *see* N.J. Ct. R. 4:4-5(a); 4:4-4(b)(1) (cross-referencing Rule 4:4-5(b)); N.J. Ct. R. 4:4(b)(3) (noting that service by a court order consistent with due process is precluded "[i]f service can be made by any of the modes provided by this rule").

Relevant here, Plaintiffs argue that there was substituted service under N.J. Stat. Ann. § 2A:15-30.1. That statute provides in relevant part that

> b. [i]f a business entity, foreign or domestic, is required to register with a State official or agency to transact business in this State and is required to register an address or an agent in this State for the service of process, process in any action in any court of this State directed to the business may be served on the State official or agency, if:
>
> > (1) The business entity has failed to register or re-register as required by law; or
> >
> > (2) The business entity has failed to maintain a registered address or a registered agent in this State for service of process, as required by law.

> c. The official or agency upon which substituted service has been
> made, within two days after service, shall notify the business entity
> to which the process was directed, by a letter to its registered
> office, if any, or to any officer of the entity known to the official or
> agency.  A copy of the process or other paper served shall be
> enclosed with the letter.

N.J. Stat. Ann. § 2A:15-30.

Thus, New Jersey law permits plaintiffs to serve process on corporate defendants by serving the State of New Jersey's Department of the Treasury if certain conditions are met. *LimoStars, Inc. v. N.J. Car & Limo, Inc.*, 2011 U.S. Dist. LEXIS 87771, 2011 WL 3471092, at *3 (D. Ariz. Aug. 8, 2011) (citing *B&B Realty Assocs. v. J&S Mgmt. Enters.*, 2008 N.J. Super. Unpub. LEXIS 2872, 2008 WL 4681981, at *5 (N.J. Super. Ct. App. Div. Oct. 22, 2008) ("We are satisfied that there was good service on" the corporate defendant when service on a statutory agent could not be effectuated, so counsel served the New Jersey Department of Treasury on behalf of the corporation pursuant to N.J. Stat. Ann. § 2A:15-30.1)); *Zurich Am. Ins. Co. v. Big Green Grp., LLC*, Civ. No. 19-11500, 2021 U.S. Dist. LEXIS 195646, *5–6 (D.N.J. Oct. 8, 2021) (noting that "the State Treasurer is authorized to receive service of process on behalf of entities that have failed to maintain a registered agent or failed to register with the State Treasurer"); *Argonaut-Midwest Ins. Co.*, 2018 WL 6716104, at *1 n.2 (explaining that pursuant to N.J. Stat. Ann. § 2A:15-30.1(b), the State Treasurer is authorized to receive service of process on behalf of entities that have failed to maintain a registered agent or failed to register with the State Treasurer"); *Independence Project, Inc. v. Shore Point Plaza, LLC*, Civ. No. 18-15048, 2020 U.S. Dist. LEXIS 201642, *3 (D.N.J. Oct. 29, 2020) (same).

Here, Plaintiffs attempted unsuccessfully to serve Defendant three times at Defendant's main business address. (Certification I ¶¶ 13–14.) Plaintiffs also attempted to serve Defendant at a second address where Defendant purportedly conducted business. (Moving Br. at 6; Certification

I ¶¶ 13–14.)  As detailed in the first certification of Steven J. Bushinsky, after attempting to serve

Defendant at different locations on various occasions, Plaintiffs served the Complaint on the State

Treasury pursuant to N.J. Stat. Ann. § 2A:15-30.1.  (Certification I ¶¶ 13–15.)  Specifically,

Plaintiffs made clear from their submissions that Defendants failed to maintain a registered address

or agent for purposes of service of process under N.J. Stat. Ann. § 2A:15-30.1.  Accordingly, the

Court finds that there was sufficient service of process.[4]

## B.    SUFFICIENT CAUSE OF ACTION

Before entering default judgment, the Court must also review the Complaint and determine

whether the "unchallenged facts constitute a legitimate cause of action."  *DirecTV, Inc. v. Asher*,

Civ. No. 03–1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane,

10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).  The Court must also accept Plaintiffs' "well-

pleaded" allegations as true."  *Comdyne I, Inc.*, 908 F.2d at 1146.

Here, the Court finds that Plaintiffs allege causes of action under ERISA and LMRA.  (*See*

Compl.)  ERISA provides a cause of action and remedies for an employer's failure to fulfill its

obligations to make pension or welfare fund contributions pursuant to a plan or collective

bargaining agreement.  *Bricklayers & Allied Craftsmen Int'l Union Loc. 33 Ben. Funds v. Am.'s*

*Marble Source, Inc.*, 950 F.2d 114, 117 (3d Cir. 1991).  ERISA § 502(a)(3) has always authorized

civil suits to enforce the terms of a plan, and suits to enforce terms requiring the payment of

contributions have been brought under this provision.  *See, e.g., Bugher v. Feightner,* 722 F.2d

1356 (7th Cir. 1983), *cert. denied,* 469 U.S. 822 (1984).  In 1980, Congress added ERISA § 515,

which provides that "[e]very employer who is obligated to make contributions to a multiemployer

plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to

---

[4] In addition to substituted service, the record indicates that there was also personal service at an address in Florida. (ECF No. 5.)  For reasons unclear, Plaintiffs do not argue that service was effectuated at the Florida address.

the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." *Bricklayers & Allied Craftsmen Int'l Union Loc. 33 Ben. Funds*, 950 F.2d at 117; 29 U.S.C. § 1145.

Plaintiffs have sufficiently pled that Defendant was subject to the Agreement and failed to make contributions. (Compl. ¶¶ 21–22.) As alleged, "[u]nder the terms of the [Agreement] . . . Defendant is required to regularly pay to Plaintiff Funds certain sums of money the amounts of which are determined by either the hours worked by Defendant's employees, or by Defendant's gross labor payroll," which it has failed to do. (*Id.*) Moreover, paragraph 24 of the Complaint specifies that pursuant to the Agreement and Trust Agreements, Defendant was obligated to (1) timely remit fringe benefits; (2) submit monthly remittance reports; (3) produce books and records upon request; (4) pay liquidated damages, interest, and attorneys' fees, (5) abide by the terms of the collection policy; and (6) deduct union dues checkoffs, which again, it has failed to do. (*Id.* ¶ 24.) Thus, Plaintiffs have sufficiently pled an ERISA violation.

In addition to their ERISA claim, Plaintiffs also allege that Defendant breached the Agreement in violation of the LMRA. (*Id.* ¶ 41 ("The Employer failed to make benefit contributions as required by [the Agreement] and other documents incorporated by the [Agreement], such as the Funds' Trust Agreements or Plan Documents in violation of [Section] 301 of the LMRA.")). Plaintiffs have sufficiently pled that (1) Defendant was subject to the Agreement, (2) pursuant to the Agreement, Defendant was required to remit dues checkoffs, (3) Defendant breached the Agreement by failing to remit dues checkoffs, and (4) Defendant withheld the amounts from union-member employees' wages but did not remit the amounts to the union. (Compl. ¶¶ 14, 22, 23, 34.) *See Hudson Cnty. Carpenters Loc. Union No. 6 v. V.S.R. Const. Corp.*, 127 F. Supp. 2d 565, 568 (D.N.J. 2000) ("It is well-established that the failure to make

contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515 and a violation of LMRA § 301.").

Accordingly, Plaintiffs have brought sufficient causes of action against Defendant.

**C.    WHETHER JUDGMENT IS PROPER**

Next, the Court considers whether default judgment is proper. Here, Defendants are in default because they have failed to respond to the Complaint. In the absence of a responsive pleading, there is nothing in the record to indicate that Defendants have any meritorious defenses. Such failure to defend weighs in favor of granting Plaintiffs' motion for default judgment. *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 829 (D.N.J. 2021). Moreover, Defendants' failure to respond and litigate this action would leave Plaintiffs without a remedy to obtain damages that resulted from Defendants' failure to make payments to the funds. Therefore, this Court finds that Plaintiffs have been prejudiced and will continue to be further prejudiced if default judgment is not granted because they "have not yet received the delinquent contributions that they are owed." *Trs. of the United Food and Com. Workers Union and Participating Food Indus. Emps. Health and Welfare Fund v. Mt. Laurel Ctr. for Rehab. and Health Care*, Civ. No. 19-15417, 2020 WL 2111027, at *3 (D.N.J. May 1, 2020). Plaintiffs have further been prejudiced by Defendant's failure to file an answer or otherwise present a defense as it has prevented them from moving forward with the instant case. *See Trs. of the N.J. B.A.C. Health Fund v. Doran Tatrow Assocs.*, No. 18-16556, 2020 WL 525922, at *2 (D.N.J. Jan. 31, 2020). This prejudice weighs in favor of granting Plaintiffs' Motion. Accordingly, given that Plaintiffs satisfy all of the necessary requirements, the Court will enter default judgment for Plaintiffs.

### D.    REMEDIES

Having found default judgment proper under these circumstances, the Court turns to Plaintiffs' claims for damages. Although the factual allegations of the Complaint will be taken as true, the amount of damages must still be proven. *Comdyne I, Inc.*, 908 F.2d at 1149. Courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp.*, 183 F. Supp. 3d at 605. In determining the amount of damages, the Court may conduct a hearing, but one is not necessary if the Court "ensure[s] that there [is] a basis for the damages specified in the default judgment." *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). Further, it is typical and an appropriate exercise of judicial power for "a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Id.* (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

### 1.    Unpaid and Late-Paid Contributions

To support their claim for damages, Plaintiffs submitted a certification of Steven J. Bushinsky from May 21, 2024, and various exhibits showing how much money Defendant owes. (ECF No. 11-3.) Plaintiffs also submitted an updated certification with exhibits updating their damages. (ECF No. 14.) That updated certification provides that Plaintiff Funds were seeking a judgment for unpaid benefit contributions between March 9, 2024, and April 20, 2024; however, since filing this Motion, Plaintiffs report that Defendant has remitted contributions for the same period, "requiring Plaintiffs to update their damages claim as set forth in the original Motion papers." (*Id.*) Accordingly, the record indicates that as of September 23, 2024, Defendant has paid the contributions due for March 9, 2024 to May 10, 2024, but not the interest or liquidated

damages due on these late-paid contributions. (Certification II ¶ 3.) The interest and liquidated damages for the late-paid contributions is $50,691.44. According to the updated certification, Defendant is now also delinquent for July 6, 2024 to August 31, 2024 in the amount of $56,885.85 (*Id.* ¶ 4.) The interest and liquidated damages for that period are $520.62 and $11,377.17, respectively. These summer 2024 dues, with interest and liquidated damages, therefore totals $68,783.64. Therefore, total contributions to be paid over the two periods, with interest and liquidated damages, is $50,691.44 + $68,783.64, which is equal to $119,475.08. (*Id.* ¶ 4.) The lengthy original certification submitted by Steven J. Bushinsky details the basis for the damages sought and is supported by the exhibits. (*See* Certification I ¶¶ 22–36.) As such, the Court finds that Plaintiffs are entitled damages in the amount of $119,475.08.

        2.   <u>Attorneys' Fees</u>

Plaintiffs also seek attorneys' fees in the amount of $23,793.00. (Moving Br. at 29.) Before attorneys' fees can be awarded, a determination must be made as to whether they are reasonable. This is done by conducting a lodestar analysis, which multiplies a reasonable hourly rate by a reasonable number of hours worked. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). District courts have substantial discretion in determining reasonable rates and hours, *id.*, though "in most cases, the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). Parties seeking attorneys' fees "must include fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Evans v. Port Auth. of N.Y. and N.J.*, 273 F.3d 346, 361 (3d Cir. 2001) (citation omitted). This standard mirrors our Local Civil Rule 54.2, which requires that motions for fees be accompanied by documentation detailing the nature of services provided, dates of service and time spent, normal billing rates, and similar information. L. Civ. R. 54.2(a). Failure to sufficiently

document hours may lead to a reduced award. *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Here, paragraphs 33 through 35 of Bushinsky's first certification explain that legal services were performed by the law firm of O'Brien, Belland & Bushinsky, LLC, that the partners at the firm charged at a rate of $200.00 per hour, that an associate charged at a rate of $175.00 per hour, and that two paralegals charged at a rate of $90.00 per hour. (Certification I ¶¶ 33–35.) The Certification explains that the attorneys' fees in this case are $16,273.00, which is supported by Exhibit R, reflecting a detailed invoice of the legal services performed, the amounts billed, the hours worked, and the date of each service. (*Id.*) Plaintiffs' amended proposed order shows that attorneys' fees should be $23,793.00. (*See* ECF No. 14-3.) Bushinsky's second certification does not, however, provide support for this increase from $16,273.00 to $23,793.00. Absent evidence in the record, the Court is not inclined to assume that Plaintiffs are entitled to the higher fees. *See Evans*, 273 F.3d at 361 (noting that parties seeking attorneys' fees "must include fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys").

Accordingly, the Court finds that Plaintiffs' are entitled to $16,273.00 in attorneys' fees.

3.  Surety Bond Increase

As a final remedy, Plaintiffs seek in their Complaint (and the Motion) an order from the Court requiring Defendant to increase its surety bond from $66,000.00 to $128,000.00 in light Defendant's delinquency. (Compl. ¶¶ 44–46; Moving Br. at 28–29.) The Court agrees, and will therefore also order Defendant to increase its bond accordingly.

## V. __CONCLUSION__

For the reasons stated above, Plaintiffs' Motion for Default Judgment pursuant to Rule 55 (ECF No. 11) will be **GRANTED**.  An appropriate Order will follow.


Date: December 12, 2024

ZAHID N. QURAISHI
**UNITED STATES DISTRICT JUDGE**